## Drake and Morton v. Rowe.

(Decided February 10, 1915.)

Appeal from Muhlenberg Crircuit Court.

1.   Statute of Frauds—Subsection 4, Section 470, Kentucky Statutes. —Subsection 4 of Section 470, of the Kentucky Statute of Frauds,

which provides that no action shall be brought to charge any person upon a promise to answer for the debt, default or misdoing of another, unless the promise be in writing and signed by the party to be charged therewith, applies to actions and not to defenses.

2.  Statute of Frauds.—The Statute of Frauds does not make oral contracts to answer for the debt of another person invalid; it merely prohibits the bringing of an action upon such a promise.

JONSON, WICKLIFFE & JONSON for appellants.

HUBERT MEREDITH and DOYLE WILLIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Reversing.

The appellants, Drake and Morton, brought this action in equity on December 23rd, 1912, against the appellee, T. H. Rowe, to recover from Rowe the sum of $1,086.06, which represented the unpaid portion of four notes, executed by Rowe, as principal, to the H. Herrmann Manufacturing Company, of Evansville, Indiana, hereinafter called the manufacturing company for brevity, with Drake and Morton as sureties thereon.

Upon the trial, the chancellor dismissed the petition with costs, and the plaintiffs appeal.

The four notes sued on were as follows: (1) dated August 5th, 1899, for $800.00; (2) dated October 13th, 1899, for $300.00; (3) dated November 27th, 1899, for $200.00; and (4) dated January 17th, 1900, for $200.00. The notes were executed under the following circumstances: Drake and Morton had a contract with the manufacturing company to furnish it a quantity of sawlogs to be delivered at certain designated points on Green River in Kentucky. In executing a portion of that contract Drake and Morton, with the consent of the manufacturing company, substituted Rowe in their place. By a written contract between Rowe and the manufacturing company, dated August 12th, 1899, Rowe agreed to cut and deliver to that company at Evansville, Indiana, on or before the 1st of July, 1900, all of the poplar, ash, red gum, black walnut and oak timber on 179 acres of land in Muhlenberg county, then owned by Jackson Edwards, at the prices specified in the contract. The contract contemplated that the manufacturing company would advance money to Rowe, as the work progressed, all advancements to be treated as partial payments for the timber.

Upon Rowe's part, his contract contemplated and required that he should buy and pay for the Jackson Edwards land. It was estimated that the land was worth $700.00, and that the timber upon said land was worth $800.00. The $800.00 called for by the first note of August 5th, 1899, and the $300.00 called for by the second note, dated October 13th, 1899, were advanced to Rowe by the manufacturing company, upon the credit of Drake and Morton, who were sureties upon said notes. Rowe used the $800.00 realized upon the first note in making the cash payment upon the Edwards land, and raised the remaining $700.00 upon two lien notes, one for $500.00 and the other for $200.00, both of which were signed by Rowe, as principal, and by Drake alone, as surety. These two last named notes were discounted to the First National Bank of Greenville, Kentucky, and the proceeds were paid to Edwards in full satisfaction of his purchase money, which was $1,500.00. The $300.00 realized upon the second note of October 13th, 1899, was received by Rowe from the manufacturing company, and used by him in cutting and marketing the timber.

After having worked eight or nine months upon his contract, Rowe, on account of family afflictions, sold his timber contract with the manufacturing company to his brother-in-law, B. F. Hill, for $50.00; and by his deed, dated July 17th, 1900, Rowe conveyed to Hill the Edwards tract of land, upon which there remained a lien for the unpaid purchase money of $700.00, with interest.

Hill assumed the contract and had made some progress with it, when, by a sudden "run-out," or flood, in Green River, all the logs which Rowe and Hill had hauled to the banks of Green River, and were undelivered, floated down the river and were lost beyond recovery, except a few that were caught and delivered to the manufacturing company at Evansville. Hill did no further work under the contract.

Shortly thereafter, on August 24th, 1900, the manufacturing company made out a statement against T. H. Rowe, showing that it had advanced to him upon the four notes first above mentioned and for other purposes, under the timber contract, money aggregating $1,786.86, upon which they gave Rowe a credit for logs delivered, amounting to $700.80, leaving a balance of $1,086.06 due the company from Rowe. The manufacturing company required Drake and Morton to pay or secure this amount,

although $286.86 thereof was not included in the four notes above mentioned.

In addition to this amount, Drake and Morton owed the manufacturing company between four and five thousand dollars upon other transactions, and, in closing the accounts, they gave their obligation, secured by mortgage, for the entire indebtedness. Subsequently, however, either in the spirit of charity, or in the exercise of a liberal business policy, the manufacturing company discounted Drake and Morton's account by deducting $32\frac{1}{2}$ per cent. from the face thereof. So, instead of paying $1,086.06 upon the Rowe account, Drake and Morton paid only $733.09.

As Drake was bound as surety for the lien notes for $700.00 held by the First National Bank of Greenville, and the timber had been cut from the Edwards land and lost, Hill conveyed the land to Drake, on October 19th, 1900, in consideration of Drake's agreement to pay the lien thereon, which then amounted to $780.00.

This closed the land transaction which was between Drake and Rowe, and subsequently between Drake and Hill. Morton had nothing to do with it.

As above indicated, the firm of Drake and Morton brought this suit on December 23rd, 1912, upon the four notes which the partners Drake and Morton paid as sureties for Rowe.

In his answer, Rowe admitted he received the money, amounting to $1,100.00, upon the first two notes; he denied, however, that he signed either of the other two notes or that he received any of the proceeds thereof. By the fifth paragraph of his answer, Rowe set forth the contract of July 17th, 1900, between himself and Hill whereby Hill was substituted in Rowe's place under the contract with the manufacturing company; and he alleged that this was done not only with the consent and approval of Drake and Morton, but that, in consideration of Rowe's conveying the land to Hill, Drake and Morton agreed to pay the notes Rowe had given to the manufacturing company, and to release Rowe from all liability thereon. By the sixth paragraph of his answer Rowe set up the contract wherein Hill had sold and transferred the land to Drake, and alleged that Drake agreed with Hill that if Hill would convey the land to Drake, Drake would pay the four notes sued on, and that the transfer of the land would be accepted by him in full and com-

plete settlement of all the debts which Rowe owed the manufacturing company.

The court overruled the demurrers to the fifth and sixth paragraphs, and to the answer as a whole. Upon these issues the case was tried, with the result above indicated.

For a reversal it is insisted, first, that the demurrers to the fifth and sixth paragraphs of the answer should have been sustained, upon the idea that the contracts therein relied upon being in parol, were contracts to answer for the debt of another person, and were, therefore, within Sub-section 4 of Section 470 of the Kentucky Statutes, generally known as the Statute of Frauds.

That statute provides:

"No action shall be *brought* to charge any person * * * upon a promise to answer for the debt, default or misdoing of another * * * unless the promise * * * be in writing and signed by the party to be charged therewith, or by his authorized agent."

Appellant's contention involves a misconception of the meaning and effect of the statute relied on, since it applies to actions and not to defenses; and the defendant's plea went to the defense and not to the cause of action.

The statute does not make oral contracts to answer for the debt of another person invalid; it merely prohibits the bringing of an action upon such a promise. The Aultman & Taylor Co. v. Meade, 121 Ky., 241, 123 Am. St. R., 193, and Louisville Banking Co. v. Buchanan, 117 Ky., 975, are, in principle, decisive of this question. The defenses presented by the fifth and sixth paragraphs of the answer were not precluded by the statutes, and the demurrers thereto were properly overruled.

But, upon the merits of the defenses presented in the fifth and sixth paragraphs of the answer, the weight of the evidence is with Drake and Morton. In substance, it appears that Rowe and Hill saw Drake, who was the active partner in this business, and told him their purpose of substituting Hill for Rowe under the first contract, and that Drake said he had no objection to it, but that he could not make the agreement to substitute Hill for Rowe, because Rowe's agreement was direct with the manufacturing company. Neither Rowe nor Hill says Drake made the agreement relied upon in the answer; the most they say is that Drake merely said he

had no objection to their plan, and gave the very good reason above indicated for his refusal to agree to it. The contract was between Rowe and the manufacturing company; not between Rowe and Drake and Morton.

As to the second contract, whereby Hill transferred the land to Drake, there is no material difference between the witnesses. When the land was originally bought from Edwards it was estimated the timber was worth $800.00, and the land $700.00. The timber, in the meantime, had been cut and there still remained the unpaid purchase money of $780.00; and, as Drake was surety for that money, he insisted upon some arrangement by which he could be secured. To effect that purpose, Hill conveyed the land to Drake, who agreed to pay the unpaid purchase money, which was more than the estimated value of the land, after the timber had been cut. This settled the land transaction and put it out of the case. It was a separate and distinct transaction, and has no bearing upon the merits of this suit, which is brought solely upon the four notes first above specified.

The proof relating to the third and fourth notes is not sufficient to fix upon Rowe any liability for those notes. Rowe admits he signed the first two notes for $800.00 and $300.00, respectively, and received the proceeds thereof, but he expressly denies that he signed either the third or fourth note; and he further says he did not receive any part of the proceeds of the third or fourth notes.

Furthermore, Drake, who was the managing partner in this transaction, admits Rowe did not sign the third and fourth notes, but says Rowe authorized Hill to sign them, and that Hill did so; and Drake further says Rowe admitted he had authorized Hill to sign the notes. Rowe denies both statements, and Hill also denies that he signed the notes for Rowe, or that he had any authority to do so. It is true Pannell says Hill told him that Rowe had authorized Hill to sign the notes; but Hill contradicts Pannell, and the testimony, if true, would not be competent against Rowe. So, under the proof, it must be said the appellants have failed to make out their case against Rowe upon the third and fourth notes.

The appellants' right to recover, therefore, must be limited to the first two notes for $800.00 and $300.00, respectively, aggregating $1,100.00. The third and fourth notes, aggregating $400.00, being excluded from the total

bill of $1,786.86, which Rowe owed the manufacturing company, leaves a gross indebtedness by Rowe of $1,386.86; and deducting from this the credit of $700.80, there remains a net balance of $686.06. From this net balance there should be deducted the credit of 32½ per cent., amounting to $222.80, which was not paid by Drake and Morton, thus leaving a final net balance of $463.25, for which appellants should have judgment, with interest thereon from August 24th, 1900, the date of its payment by appellants to the manufacturing company.

The judgment is reversed, with instructions to the circuit court to enter a judgment as above indicated.